IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 20, 2006

**GREGORY L. ANDERSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2002-T-50     Mark J. Fishburn, Judge**

---

**No. M2005-02878-CCA-R3-PC - Filed Janaury 24, 2007**

---

Aggrieved of his driving under the influence (DUI), fifth offense, conviction, the petitioner, Gregory L. Anderson, sought post-conviction relief, which was denied by the Criminal Court for Davidson County after an evidentiary hearing. On appeal, the petitioner pursues his claim of ineffective assistance of trial and appellate counsel. We affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Kimberly S. Hodde, Nashville, Tennessee, for the Appellant, Gregory L. Anderson.

Robert E. Cooper, Jr., Attorney General & Reporter; Elizabeth B. Marney, Senior Counsel Criminal Justice Division; Victor S. Johnson, III, District Attorney General; and Jennifer Tackett, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The petitioner stands convicted of DUI, fifth offense, following a 2002 jury trial in Davidson County Criminal Court. He received a two-year sentence, as a Range I offender, 200 days of which were to be served in custody, followed by two years' probation. On direct appeal, the petitioner unsuccessfully raised two issues: (1) the trial court's failure to suppress evidence obtained as a result of his arrest at a sobriety checkpoint; and (2) the denial of his motion in limine to exclude testimony at trial regarding his use of a racial slur. *See State v. Gregory L. Anderson*, No. M2002-02289-CCA-R3-CD (Tenn. Crim. App., Nashville, Oct. 31, 2003).

Relevant to the roadblock challenge, the court on direct appeal ruled,

The defendant contends that the officer did not have reasonable suspicion or probable cause to pull the defendant over for

further investigation. He argues that the officer could not determine whether the smell of alcohol was coming from the defendant or the passenger. Not only did the officer detect the odor of alcohol, the defendant admitted that he had been drinking. While this did not give the officer probable cause to arrest the defendant for DUI, it was enough to "establish the right of the officer to briefly detain the defendant at the scene and administer field sobriety tests or otherwise ascertain defendant's state of sobriety. The defendant's argument on this issue is without merit.

*Id*., slip op. at 4 (citation omitted).

The defendant also contends that General Order 410-1, establishing the guidelines for sobriety checkpoints, is unconstitutional because of paragraph III C 5, which states: "Only upon observing a noticeable sign of possible intoxication or other offense will further inquiry be warranted." In developing the constitutional guidelines for roadblocks in Tennessee, our supreme court relied on *Michigan v. Sitz*, 496 U.S. 444 (1990). In *Sitz*, all vehicles were stopped and the drivers were checked for signs of intoxication. *Sitz*, 496 U.S. at 447. If the officer detected possible intoxication, the vehicle was pulled into a pre-determined location for further inquiry. *Id.* The facts in this case are almost identical to *Sitz*. Paragraph III C 5 of the General Order is not unconstitutional in allowing officers to briefly detain motorists who exhibit signs of possible intoxication. The defendant's argument on this issue is without merit.

*Id.* (citation omitted).

The defendant [also] contends that the sobriety checkpoint was illegal because it did not substantially comply with the Department of Safety guidelines. . . .

1. Roadblock site not established based on knowledge

General Order 410-1 paragraph A 1 provides: "Individual site selections will be based on the knowledge of alcohol-related crashes and the knowledge of DUI arrests in a particular area. Documentation of site selections will be maintained on file by the District/Division Captain." The defendant contends that the State provided no proof or testimony regarding this issue. Therefore, the roadblock was illegal.

The trial court found that the list of pre-approved sites showed that some thoughtfulness and thoroughness went into selecting the sites. The court found that the fact that this site was on the pre-approved list showed that they most likely reviewed the appropriate data in selecting the site. The inference drawn by the trial court is reasonable. . . . Officer Jennings testified that the roadblock site was selected by his superiors, the location was on the list of pre-approved roadblock sites, and there were numerous senior officers present. We hold that the trial court did not err in finding that the sobriety checkpoint in this case substantially complied with paragraph III A 1 of the guidelines.

2. No adequate warnings site was ahead

The defendant also contends that the roadblock did not substantially comply with paragraph III A 3 of the guidelines. The pertinent section states: "The location must give motorists adequate prior warning that a roadblock is ahead." The defendant argues that there were no warning signs visible at the roadblock site. Trooper Jennings testified that he saw illuminated signs at the scene, but he did not actually see them in place. The defendant testified that he did not see any signs. The trial court found that since the signs were present at the scene, they were probably used.

The record before us does not preponderate against the trial court's finding on this issue. Even if there were no signs displayed at the scene, it would not be dispositive of whether there was substantial compliance with the adequate warnings requirement. While [*State v.*] *Downey*[, 945 S.W.2d 102 (Tenn. 1997),] did list adequate warnings as one of the factors in determining the constitutionality of a roadblock, the court went on to say that no single factor is dispositive of the issue. The record indicates that there was adequate warning to approaching motorists even without any signs. Trooper Jennings testified that the officers were wearing reflective vests, orange cones were in place, blue lights were flashing, numerous marked police vehicles were on the scene, and the location was in a well-lit, visible area. The trial court did not err in finding that the roadblock substantially complied with the adequate warnings requirement.

*Gregory L. Anderson*, slip op. at 4-5 (citation omitted).

Relevant to the motion in limine, the court on direct appeal ruled,

The defendant argues that testimony of his use of the word "nigger" in referring to Trooper Jennings was not relevant to his level of intoxication. The State contends that it was relevant to show his level of intoxication in light of his use of such an inflammatory and derogatory word in front of his passenger and the trooper, both of whom are African-American. . . . The racial slur was relevant to show the defendant's belligerence and that he was impaired. The trial court did not abuse its discretion in finding that testimony of his use of the racial slur was relevant to show the defendant's level of intoxication.

The defendant also argues that the probative value of the testimony concerning his use of the racial slur was substantially outweighed by unfair prejudice. We certainly agree with the defendant and the trial court that the racial slur used by the defendant in referring to Trooper Jennings is inflammatory. While this Court deplores the defendant's use of such a word, it was the defendant's choice to say it. In the context that the racial slur was used, it was clearly probative of the defendant's state of mind at the time. As the State points out, the defendant's passenger and Trooper Jennings are African-American. The testimony goes to show that the defendant was not in control of his faculties and used poor judgment, more probable than not influenced by his use of alcohol. We hold that the probative value of the testimony concerning the defendant's use of a racial slur was not substantially outweighed by the danger of unfair prejudice.

*Id*., slip op. at 5-6.

Within one year of the court's opinion on direct appeal, the petitioner filed a petition for post-conviction relief. The petition alleged ineffective assistance of trial counsel based on the following actions and omissions:

(1) the failure to "make adequate pretrial filings" on the suppression and motion-in-limine issues;

(2) the failure to "advocate these issues with the tenacity and fervor that Sixth Amendment compliant advocacy requires";

(3) the commission of "critical errors of legal judgment during the Suppression Hearing that promoted an erroneous denial" of the motion;

(4) the failure "to adequately impeach the trial testimony of Trooper Jennings";

(5) the failure to make a Rule 29 Motion for Judgment of Acquittal at the conclusion of the State's proof and at the close of the proof; and

(6) the failure "to adequately brief" the issues in the motion for new trial.

The petition further alleged ineffective assistance of appellate counsel based on the following actions and omissions:

(1) the failure to adequately communicate with the petitioner during the pendency of the appeal;

(2) the failure to allow the petitioner to view, in advance of filing, the appellate brief and to discuss its contents;

(3) the submission of a "shoddy" brief on appeal;

(4) the failure to advise the petitioner of his right to file a petition for rehearing; and

(5) the failure of newly retained appellate counsel to file a Rule 11 application for permission to appeal.[1]

The post-conviction court conducted an evidentiary hearing on March 21, 2005. The petitioner testified as did his brother, Brian Anderson, and the petitioner's trial and appellate counsel. The petitioner testified that he retained the services of trial counsel prior to the preliminary hearing. At the preliminary hearing, the arresting officer, Trooper Jennings, testified and related that the petitioner made a racial slur. The petitioner denied making any such slur and told trial counsel as much. The petitioner also disputed other facets of the trooper's testimony, and the petitioner testified that in his opinion the trooper perjured himself at the preliminary hearing. The petitioner and trial counsel clashed over how to deal with the trooper's preliminary hearing testimony, and the petitioner asserted that at some point trial counsel had him "sign a thing where [he] wouldn't interfere with his legal judgment."

---

[1] The petition also alleged prosecutorial misconduct and raised anew the constitutionality of the roadblock and the admission of the racial slur, which had been previously decided on direct appeal. The petitioner does not pursue these grounds on appeal and confines his argument to ineffective assistance of trial and appellate counsel.

The petitioner claimed that, after his case was bound over to the grand jury, trial counsel never discussed with him filing pretrial motions. The petitioner said that he learned about the roadblock suppression motion the day of the hearing and that he did not actually receive a copy of the motion until after the hearing. The petitioner was very concerned about the racial slur and wanted any testimony about it excluded at trial.

Trooper Jennings also testified at the suppression hearing. In the petitioner's opinion, that testimony was inconsistent with the testimony given at the preliminary hearing, but counsel did not exploit the inconsistencies such that the trial court found the trooper's testimony to be credible in connection with denying the suppression motion. The petitioner testified that approximately 10 minutes before the hearing, trial counsel asked him to testify that he did not see any roadblock signs at the checkpoint. The petitioner did not feel that he was prepared to testify.

The petitioner testified that he was not involved in pretrial preparation, had not before attended or participated in a jury trial, and was not prepared to give trial testimony. The petitioner said that testifying was first mentioned to him as the trial was underway. Although trial counsel wanted the petitioner to testify, the petitioner did not because he "was not prepared." After the jury found the petitioner guilty, trial counsel continued to represent the petitioner. Trial counsel filed a new trial motion but did not discuss beforehand any of the issues to be raised on appeal. Also without consulting the petitioner, counsel prepared and filed an appellate brief with the Court of Criminal Appeals. The petitioner testified that after he received a copy of the brief and reviewed it, he noticed that the "citation to the transcripts were all erred and [he] believed, it seemed like there was something missing out of it." The petitioner discussed the problems with counsel and directed counsel to file a corrected brief, which counsel did.

The petitioner related that after his conviction was affirmed on appeal, he retained different counsel to prepare and file a Rule 11 application for permission to appeal to the Tennessee Supreme Court. That attorney was already representing the petitioner on another offense, for which the petitioner was being detained pretrial. The petitioner claimed that new counsel quoted a fee of $3,500 for the Rule 11 application and that the petitioner's brother handled the arrangements for hiring new counsel. At the post-conviction hearing, the petitioner identified a letter dated January 14, 2004, from new counsel advising that he had not filed a Rule 11 application and asking for a mailing address to return the retainer fee.

On cross-examination, the petitioner pinpointed the conclusion of the suppression hearing in criminal court as the time when he began to get upset and have concerns with trial counsel's representation. Even so, the petitioner did not discharge trial counsel. The petitioner acknowledged that counsel presented an oral motion at trial to exclude the racial slur, that the trial judge conducted a hearing on the motion, and that the trial judge denied the motion. Regarding the roadblock, the petitioner also acknowledged that after the guilty verdict, trial counsel filed a motion asking the trial court to reconsider the suppression motion and a separate new trial motion. When the State inquired if the petitioner was "still okay" with trial counsel's services at the time of the motion for new trial, the petitioner responded that he was satisfied.

On cross-examination, the petitioner gave December 23 as the date when his brother retained new counsel to file a Rule 11 application. The petitioner said that he had previously discussed such representation with new counsel. The petitioner denied that new counsel had previously cautioned him that counsel was going to be out of town during the Christmas break. The petitioner admitted knowing that a Rule 11 application had to be filed within 60 days from October 31 when the intermediate appellate court affirmed his judgment.

The petitioner's brother, Brian Anderson, testified that "about middle to late December" the petitioner called him and wanted him to "follow-up" with new counsel to see if counsel was still willing to handle the Rule 11 application and how much he would charge for his services. Brian Anderson testified that he called and spoke with new counsel on December 22 at which point counsel quoted a fee of $1,000 to prepare and file the Rule 11 application, with an additional amount of $2,500 due if the supreme court accepted review of the case. Brian Anderson testified that he told counsel that he would "bring him a check the next day," which he did. Brian Anderson said that he handed the check to counsel's receptionist. Brian Anderson also said it was his "understanding" that new counsel was aware of the approaching deadline to file the Rule 11 application. Brian Anderson recalled that new counsel "was happy that [Brian Anderson] had contacted him then because he was close to going on vacation."

Rule 11 counsel testified and confirmed that he and the petitioner had discussed on several occasions that the petitioner "probably want[ed]" to hire him to pursue further appellate review by the Tennessee Supreme Court. Counsel explained,

> After I found out that his appeal had been denied sometime I believe the 30th or 31st of October, I then realized that the deadline was going to come up during the time which I knew I was going to be on vacation. . . . I mentioned that to [the petitioner] that his deadline for filing his Rule 11 application was going to come up while I was on vacation, so he would need to retain me well ahead of that time. . . .
>
> . . . .
>
> . . . I know that I saw him twice in early December and again reiterated to him that the deadline was fast[ ] approaching and "don't wait until the last minute." I know I specifically said that because I always know that I'm going to be out that week. . . .
>
> . . . .
>
> . . . And [the petitioner's brother] came to my office on the 23rd, I had already left for my vacation. . . . And my secretary accepted the money . . . not knowing what this money was for, whether he was

paying on his . . . sixth offense DUI or whether it was for something else . . . . When I got back, I found out that [the petitioner's brother] had come in . . . and, therefore, I wrote [the petitioner] a letter saying, "It's too late. It was too late when your brother showed up. I was already gone."

The petitioner's trial counsel testified about the services and representation that he provided. Trial counsel testified that throughout the representation, he spoke to the petitioner "a lot on the telephone." Trial counsel remarked, "He was a client [who] would call more than normal." Trial counsel recalled questioning Trooper Jennings at the preliminary hearing about the roadblock. After the case was bound over to the grand jury and to criminal court, trial counsel filed a suppression motion regarding the roadblock. Trial counsel testified that his standard practice included advising clients what motions would be filed and why the motions were being filed. The petitioner's suppression motion did not include much detail, and trial counsel explained that for tactical reasons he kept the motion brief so as not to alert the State to the precise defense strategy.

Trial counsel also explained that he subpoenaed the records regarding the roadblock to have them available at the hearing. Trial counsel was concerned that if the State did not have the roadblock records at the suppression hearing and was unprepared for the hearing, the trial court would grant a continuance. Trial counsel wanted the hearing to be held before the State could get completely prepared, so he subpoenaed the roadblock records to avert that basis for granting a motion to continue.

Trial counsel agreed that the petitioner was concerned about the inconsistencies between Trooper Jennings' preliminary hearing testimony and suppression motion testimony. Trial counsel did not specifically recall when he advised the petitioner that he should testify at the suppression hearing, but he may have given that advice during the hearing after certain testimony from Trooper Jennings. Trial counsel remembered challenging the trooper's credibility during trial based, inter alia, on inconsistent versions of when the trooper formed the opinion that the petitioner was inebriated. Trial counsel renewed his earlier suppression motion and after a jury-out hearing, the trial court denied the motion. Furthermore, after the trial, counsel filed yet another motion seeking suppression of the roadblock stop based on the trooper's trial testimony.

Trial counsel could not specifically recall if the petitioner admitted or denied uttering the racial slur. Both he and the petitioner were concerned about the admission of the racial slur at trial. Trial counsel moved in limine to exclude such testimony; that motion was denied after a hearing before trial commenced.

As for the petitioner's complaint that he failed to move for judgment of acquittal at the close of the proof, trial counsel explained that in his opinion "there was more than enough evidence for the case to go to the jury and that the Judge would certainly have denied the motion."

Trial counsel insisted that he did discuss possible appellate issues with the petitioner. Trial counsel told the petitioner that he "felt the strongest argument was the motion to suppress." On the other hand, the petitioner focused on the trooper's inconsistent testimony and wanted to accuse the trooper of committing perjury. In trial counsel's legal estimation, the statements would not qualify as perjury, and there was absolutely no evidence that the trooper intentionally committed any such perjury. Trial counsel testified that he flatly refused to pursue a perjury claim on appeal and that he agreed to provide appellate representation "under the condition that [counsel] would be in control of what issues [were] presented." Trial counsel recounted that the petitioner did not want to accept the legal principle that the trooper's credibility was an issue for the trier of fact.

The petitioners' retained appellate counsel filed a brief and did not dispute that a copy of the brief was sent to the petitioner after it was filed. Appellate counsel also did not dispute that the petitioner alerted him to problems in the brief regarding citations to the record. Appellate counsel testified that he proofread the brief, found the problems to which the petitioner had referred, and immediately filed a corrected brief. Appellate counsel recalled no other problems with the brief being mentioned by the petitioner.

Appellate counsel saw no legal basis to file a motion asking the Court of Criminal Appeals to reconsider its opinion; therefore, counsel did not discuss that procedural avenue with the petitioner.

On cross-examination, counsel agreed that he was concerned with the prejudicial impact of the racial slur on the jury. Counsel explained that he did not file a written motion in limine to exclude the slur because after researching the issue, he could locate no case on point, leaving him with a general relevance/prejudice argument "that could be easily made orally." Counsel disputed the idea that a written motion "carries more weight" than an oral motion. He also disputed that the trial judge would have treated the suppression motion differently had the trooper's credibility been impeached.

On the question why counsel subpoenaed the roadblock records for the suppression hearing, counsel elaborated about his strategy:

> I felt that if I went into the hearing without having made anymore specific allegations and without having subpoenaed any documents, that you obviously, the State, would not have been prepared at all; therefore, I felt that Judge Clement would have certainly provided the State's continuance. My thinking was that if I subpoenaed the documents, in other words, kind of gave the chance, the State a chance to be ready, because I had subpoenaed the documents, my hope was that Trooper Jennings would come in; still not be prepared because maybe he didn't bother to go get the documents I subpoenaed, maybe he didn't review them, maybe he's not the one to be able to testify from the documents. My hope was that, at that

point, if I had, since I requested the documents, that if the State still wasn't ready, still couldn't put on the burden of proof that it was a legal road block, then Judge Clement may have felt that you had been put enough on notice through the subpoenas, that if you weren't ready that he would have granted the motion.

As events unfolded, counsel introduced a number of the roadblock records in connection with cross-examining Trooper Jennings at the suppression hearing. Counsel used the records in an effort to impeach the trooper.

At the conclusion of the hearing, the post-conviction court took the matter under advisement. On October 11, 2005, the court entered a written memorandum opinion denying post-conviction relief. The post-conviction court included in its opinion a concise and thorough statement of the testimony at the hearing and demonstrated its legal familiarity with the post-conviction process, particularly claims alleging ineffective assistance. The post-conviction court credited the testimony of the petitioner's trial counsel who also handled the direct appeal. The post-conviction court gave considerable deference to counsel's tactics and strategy, recognizing that the petitioner contacted counsel almost daily and "demanded to have a hands-on involvement in the case to his detriment." The court concluded that the representation afforded to the petitioner pretrial, at trial, and on direct appeal was "diligent and exemplary."

The post-conviction court found no merit in the petitioner's claim that he retained new counsel to prepare and file a Rule 11 application. The court credited counsel's testimony, particularly that counsel had discussed with the petitioner the filing deadline and clearly advised the petitioner that he would not be in town the last two weeks of December when the application had to be filed. The court found that counsel's receptionist had accepted the money tendered by the petitioner's brother under the belief that the money would be applied to other outstanding legal fees. The post-conviction court concluded that it was "not satisfied by clear and convincing evidence that [counsel] was retained," and the court attributed the failure to file the Rule 11 application to the petitioner's "neglect."

Now on appeal, the petitioner assails the post-conviction court's findings and conclusions.

In post-conviction proceedings, the petitioner has the burden of proving by clear and convincing evidence the claims raised. T.C.A. § 40-30-110(f) (2006). On appeal, the lower court's findings of fact are reviewed de novo with a presumption of correctness that may only be overcome if the evidence preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997).

When a petitioner challenges the effective assistance of counsel, he has the burden of establishing (1) deficient representation and (2) prejudice resulting from that deficiency. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984); *Baxter v. Rose*, 523

S.W.2d 930, 936 (Tenn. 1975). Deficient representation occurs when counsel's services fall below the range of competence demanded of attorneys in criminal cases. *Bankston v. State*, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991). Prejudice is the reasonable likelihood that, but for deficient representation, the outcome of the proceedings would have been different. *Overton v. State*, 874 S.W.2d 6, 11 (Tenn. 1994). On review, there is a strong presumption of satisfactory representation. *Barr v. State*, 910 S.W.2d 462, 464 (Tenn. Crim. App. 1995). If prejudice is absent, there is no need to examine allegations of deficient performance. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

In evaluating counsel's performance, this court does not examine every allegedly deficient act or omission in isolation, but rather we view the performance in the context of the case as a whole. *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The primary concern of the court should be the fundamental fairness of the proceeding of which the result is being challenged. *Id*. Therefore, this court should not second-guess tactical and strategic decisions by defense counsel. *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997). Instead, this court must reconstruct the circumstances of counsel's challenged conduct and evaluate the conduct from counsel's perspective at the time. *Id*.; *see also Irick v. State*, 973 S.W.2d 643, 652 (Tenn. Crim. App. 1998).

Measured by these standards, it is readily apparent that the petitioner failed to carry his burden for post-conviction relief. No doubt exists that the petitioner is displeased with the services and representation he received pretrial, at trial, post trial, and on direct appeal. Notwithstanding the nature of the grievances, however, an accused is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). This post-conviction case, in our opinion, however, serves as a classic example why a reviewing court should not second-guess tactical and strategic decisions by defense counsel.

Trial counsel's approach to the suppression issues arising from the roadblock was professionally reasonable; the petitioner has not shown otherwise. Likewise, nothing appears amiss about the oral motion in limine to exclude testimony about the racial slur. The petitioner characterizes trial counsel's "half-hearted efforts and convenience-based decisions" as "inexcusable." The petitioner cannot rely solely on broad personal assertions of what is and is not professionally reasonable; at the very least, the petitioner needed some independent source to corroborate his view that the legal services he received fell below the range of competence demanded of attorneys in criminal cases. From the record before us, we are not inclined to second-guess the strategic decisions made.

We note, in particular, the petitioner's continued insistence that Trooper Jennings' credibility was not sufficiently attacked. We are not inclined, nor is it our responsibility, to scour

-11-

every syllable of Trooper Jennings' testimony for inconsistencies.[2]  Furthermore, accusations of perjury should not be made casually, as trial counsel prudently recognized.

The record clearly supports the post-conviction court's conclusion that counsel was not actually retained to file a Rule 11 application, and we agree that the petitioner is the author of his own misfortune in this regard.  The acceptance of money by counsel's receptionist did not create some type of binding obligation that a Rule 11 application would be prepared and filed.  We see nothing suspicious about counsel's receptionist's belief that the money was to be applied to other outstanding legal fees owed by the petitioner.  This ineffective assistance claim was properly rejected.

Now having given due consideration to the petitioner's appeal of the denial of post-conviction relief, we affirm the post-conviction court's ruling.

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[2] The record before us does not contain any transcribed motion hearings or trial testimony.  Likewise, the initial brief filed on direct appeal is not part of the record.